IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARY K. GARVIN, § | |
| As Trustee of the Thomas M. Garvin § | |
| Trust a/k/a The Thomas M. Garvin § | |
| Family Trust, et al., § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Case No. 3:15-CV-2157-L-BK |
| § | |
| ARCTURUS VENTURE § | |
| PARTNERS, INC., and § | |
| LEON ALI PARVIZIAN, § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to District Judge Lindsay's *Order of Reference*, Doc. 65, this case has been referred for a recommended disposition of Plaintiffs' *Petition for Fees*, Doc. 61, and *Motion for Sanctions*, Doc. 64. For the reasons that follow, the motions should be **GRANTED** to the extent stated herein.

**A. Procedural History**

According to Plaintiffs' amended complaint, Arcturus Venture Partners, Inc. ("Arcturus") is an entity owned and controlled by Defendant Ali Parvizian. Doc. 16 at 1-2. Plaintiffs, as trustees of the Thomas M. Garvin Family Trust (the "Trust"), assert that Arcturus sold to Thomas M. Garvin ("Garvin") interests in a number of purported joint ventures to conduct oil and gas exploration and drilling activities.[1] Doc. 16 at 2. The investments cost Garvin more than $2.8 million. Doc. 16 at 2. Plaintiffs contend that Defendants used the funds for other

---

[1] Garvin passed away in July 2010, and the investments at issue are now part of the Trust corpus. Doc. 16 at 5.

purposes and ventures to which Garvin did not agree, which ultimately resulted in Defendants' inability to pay all of the profits due to Garvin. Doc. 16 at 4-5.

Plaintiffs claim that Defendants (1) breached their fiduciary duty by their misrepresentations, omissions, and misappropriation of Garvin's money; (2) committed common law fraud and fraud by non-disclosure by making false representations of material fact upon which Garvin relied to his detriment; (3) violated the Texas Deceptive Trade Practices Act (the "DTPA") because Garvin was a consumer within the meaning of the DTPA, who relied on Defendants' misrepresentations and thereby suffered damages, entitling Plaintiffs to treble damages and attorneys' fees; and (4) made negligent misrepresentations which Garvin relied upon to his detriment. Doc. 16 at 6-10. Plaintiffs also request an accounting of the business operations of the joint ventures because the value of those assets and liabilities is unknown to Plaintiffs. Doc. 16 at 5-6.

In September 2016, Plaintiffs filed a *Motion to Compel*, seeking an order that would require Defendants to produce a variety of financial documents and provide complete responses to several interrogatories. Doc. 43 at 2. In addition, Plaintiffs sought to recover the attorneys' fees they incurred in filing that motion. Doc. 43 at 8. In December 2016, after Defendants failed to respond to the motion, the Court granted the motion to compel in full -- ordering Defendants to produce the documents and responses and directing Plaintiffs' counsel to submit billing records for the pertinent time period. Doc. 57. Plaintiff contends that Defendants never complied with the Court's December 2016 order compelling production. Doc. 64 at 3.

In October 2016, following the withdrawal of Defendants' counsel, the Court extended the deadline for Defendants to obtain counsel to November 28, 2016, and warned that no further

2

extensions would be granted. Doc. 51. However, to date, no attorneys have appeared on behalf of Defendants.

Plaintiffs now have (1) filed a petition to obtain their attorneys' fees incurred in connection with their motion to compel, Doc. 61; and (2) moved for a default judgment based on Defendants' failure to comply with the Court's orders compelling them to produce the requested discovery and requiring them to obtain counsel by the specified deadline, Doc. 64. Defendants have not responded to either motion.

**B. Applicable Law and Analysis**

*1. Attorneys' Fee Award for Failure to Comply with Order on Motion to Compel*

In support of their request to be reimbursed for the attorneys' fees incurred in connection with their motion to compel, Plaintiffs have filed a supporting affidavit from counsel and billing records for the pertinent time period, requesting that the Court order Defendants to pay their fees in the amount of $4,270.00. Doc. 61-1 at 2. This amount is based on lead counsel's rate of $525.00 an hour for two hours of work and co-counsel's rate of $350.00 an hour for 9.2 hours of work. Doc. 61-1 at 2. Counsel, who office in Chicago, state that the hourly rates and fees charged to Plaintiffs are reasonable for the work performed and are within the range of customary fees charged by comparable law firms in Chicago for similar services. Doc. 61-1 at 3.

The Court of Appeals for the Fifth Circuit employs a two-step process when determining an award of attorneys' fees. *Jimenez v. Wood Cty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010) (citing *Rutherford v. Harris Cnty.,Tex.*, 197 F.3d 173, 192 (5th Cir. 1999)). The first step is the lodestar calculation, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* In evaluating the reasonableness of the number of hours claimed, courts determine "whether the total hours

3

claimed are reasonable [and] also whether particular hours claimed were reasonably expended." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995) (per curiam). Any duplicative, excessive, or inadequately documented time should be excluded from the lodestar calculation. *Jimenez*, 621 F.3d at 379-80.

The party seeking attorneys' fees bears the burden of establishing the prevailing market rate for similar services. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Courts determine the appropriate hourly rate based on the prevailing community standards for attorneys of similar experience in similar cases. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). Thus, the burden is on Plaintiffs to produce sufficient evidence that the requested rates are in line with the prevailing rates for similar services by attorneys of "reasonably comparable skill, experience and reputation." *Id.* (quoting *Blum*, 465 U.S. at 896). Generally, the reasonable hourly rate is established through affidavits submitted by other attorneys practicing in the community. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citation omitted). An applicant also may establish reasonableness by directing the district court to fee awards in the same district. *See Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cty. Tex.*, 752 F.2d 1063, 1073 (5th Cir. 1985) (noting that the plaintiff submitted the affidavit of her attorney which stated the amount he usually charged for similar work and directed the court's attention to similar fee awards in the district); *Richardson v. Tex-Tube Co.*, 843 F. Supp. 2d 699, 708-09 (S.D. Tex. 2012) (same).

Following the calculation of the lodestar, the Court then must determine whether to adjust the fee on the basis of several other factors that may be of significance in the particular case. *See Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors consist of: (1) the time and

4

labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Johnson*, 488 F.2d at 717-19). Many of these factors typically are subsumed within the lodestar and should not be double-counted. *Jason D.W. ex rel. Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (per curiam). There is a strong presumption that the lodestar represents the reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

According to Plaintiffs' supporting documentation, counsel charged Plaintiff $525.00 an hour for lead counsel's service and $350.00 an hour for co-counsel. Although counsel is located outside of this Court's district, hourly rates "are to be calculated according to the prevailing market rates in the relevant community," which in this case is Dallas. *McClain*, 649 F.3d at 382 (noting that counsel's "home rates" may only be utilized if "abundant and uncontradicted evidence prove[s] the necessity" of hiring out-of-district counsel). No such evidence is present in this case, so the Court should consider the market rates prevailing in the Dallas area in assessing the appropriate hourly rate.

Lead counsel in this case has more than 30 years' experience in complex civil and commercial disputes, has tried hundreds of cases, and has experience in a wide array of subjects including breach of contract, intellectual property, class action litigation, professional

5

malpractice, and white collar criminal defense.  Doc. 61-1 at Exh. 1.  Co-counsel has more than ten years of legal experience in subject matters including insurance coverage disputes, commercial foreclosures, intellectual property, and entertainment law.  Doc. 61-1 at Exh. 2. Considering counsels' experience and the prevailing market rates in Dallas, the Court finds that Plaintiffs' counsels' requested rates of $525.00 and $350.00 are reasonable and in line with prevailing market rates in the Dallas legal community.  See Areizaga v. ADW Corp., No. 14-CV-2899-B, 2016 WL 3406071, at *5 (N.D. Tex. June 21, 2016) (Horan, J.) (holding that an appropriate hourly fee for a 15-year attorney was $450.00); S & H Indus., Inc. v. Selander, No. 11-CV-2988-M, 2014 WL 1116700, at *6 (N.D. Tex. March 20, 2014) (Lynn, J.) (finding $468.00 to be a reasonable hourly fee for an associate attorney); Miller v. Raytheon Co., No. 09-CV-440-O, 2013 WL 6838302, at *9 (N.D. Tex. Dec. 27, 2013) (O'Connor, J.) (finding that $685.00 was a reasonable hourly rate for a labor and employment attorney with 40 years of experience).

  In terms of the number of hours billed, a review of the billing records filed under seal reflects that not all of the time for which fees are sought was spent working on the motion to compel.  Some of the entries have been "block-billed" and it is unclear how much time was spent on each task.  The entries that relate solely to the motion to compel reflect that lead counsel spent .3 hours which, multiplied by his hourly rate, equals $157.50.  For the time that was block-billed the Court recommends that Plaintiffs be awarded fees for half of the time billed, which equals one half hour for lead counsel ($262.50) and five hours for co-counsel ($1,750.00).  Several entries seem not to involve the motion to compel at all, and the Court recommends reducing the fee award accordingly.  These entries for lead counsel total .8 hours (- $420.00) and .9 hours for

co-counsel (- $315.00). Consequently, it is recommended that the Court award Plaintiffs attorneys' fees of $1,435.00.[2]

### 2. Motion for Default Judgment

Pursuant to the Federal Rules of Civil Procedure and the Court's inherent authority, Plaintiffs request that the Court enter a default judgment against Defendants due to their failure to (1) comply with the Court's deadline to obtain counsel; (2) fully comply with all outstanding written discovery; and (3) otherwise comply with their discovery obligations under the federal and local rules. Doc. 64 at 1-2 (citing Doc. 51 & Doc. 57). Plaintiffs additionally request that the Court order Defendants to pay Plaintiffs' costs and attorneys' fees incurred in bringing this motion and in attempting to obtain discovery from Defendants.[3] Doc. 64 at 3-7.

Corporations are not allowed to appear in federal court other than through a licensed attorney. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202, (1993) ("[T]he lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney."); *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004) (per curiam) (same). "[T]he appropriate measure for a judge to take when confronted with an unrepresented corporation is inherently discretionary." *Memon*, 385 F.3d at 873. When a business entity like Arcturus refuses to be represented by counsel, the court may strike the entity's pleadings or enter a default judgment.

---

[2] Plaintiffs did not request an upward adjustment of their fee award nor does there appear to be any reason for a downward adjustment upon consideration of the *Johnson* factors. *See Johnson*, 488 F.2d at 717-19. Thus, it is recommended that no adjustment be made.

[3] Because the Court has already considered the attorneys' fees and costs Plaintiffs incurred in prosecuting their motion to compel, *supra*, those same fees and costs are not also considered in connection with the motion for default judgment.

7

*Farasat v. RP Managing Partners, LLC*, No. 13-CV-270-L, 2014 WL 12588306, at *1 (N.D. Tex. Nov. 13, 2014) (Lindsay, J.) (entering a default judgment against the defendant company because, *inter alia*, after counsel was allowed to withdraw, the company failed to comply with the court's order requiring it to obtain substitute counsel); *PalWeb Corp., Inc. v. Vimonta AG*, No. 00-CV-1388-P, 2003 WL 21992488, at *1 (N.D. Tex. Aug. 19, 2003) (Solis, J.) (noting that court had entered a default judgment against the defendant entity due to its failure to secure substitute counsel); *see also Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984) (per curiam) ("[The defendant] declined to hire counsel to represent the corporation so the district court properly struck the defenses of the corporation."). The Court also has the inherent authority to award fees and costs against a party who willfully disobeys a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).

Additionally, Federal Rule of Civil Procedure 37(b)(2)(A)(vi) provides that if a party fails to obey an order to provide discovery, the court may render a default judgment against the disobedient party. Instead of, or in addition thereto, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

Standing alone, however, a defendant's default does not entitle a plaintiff to a default judgment. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam); *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The decision to grant a default judgment is one soundly within the district court's discretion. *Lewis*, 236 F.3d at 67. "[D]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Id.* (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874

8

F.2d 274, 276 (5th Cir. 1989)).  There must be a sufficient basis in the pleadings for a court to enter judgment by default.  *Nishimatsu*, 515 F.2d at 1206.  In defaulting, a defendant does not admit facts that are not well-pleaded, nor does he admit any conclusions of law.  *Id.*

Upon consideration of the law and Plaintiffs' arguments, default judgment should be entered against Defendants, as no lesser remedy will suffice.  Defendants have failed to comply with at least two court orders and have not adequately participated in the discovery process.  Moreover, all correspondence the Clerk of the Court has mailed to Defendants has been returned as undeliverable since November 23, 2016, evidencing their apparent decision to no longer defend this case.  *See* Doc. 52; Doc. 53; Doc. 54; Doc. 55; Doc. 56; Doc. 58; Doc. 59; Doc. 67.

Further, Plaintiffs' amended complaint contains sufficient well-pled allegations to sustain a judgment on their claims.  *See* TEX. BUS. & COM. CODE § 17.50(a) (providing that a consumer may maintain an action under the DTPA where a defendant used a false, misleading, or deceptive act or practice then relied upon by a consumer to his detriment); TEX. BUS. & COM. CODE § 17.46 (specifying that unlawful behavior under the DTPA includes using deceptive representations in connection with goods or services); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999) (the elements of a negligent misrepresentation claim are: (1) the representation was made by a defendant in the course of its business; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998) (the elements of fraud are: (1) a material representation was made; (2) it was false; (3) when the speaker made it, he knew it was false or made it recklessly without

9

any knowledge of its truth and as a positive assertion; (4) he made the representation with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; and (6) the party thereby suffered injury); *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006) (the elements of a cause of action for breach of fiduciary duty are: (1) that the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff).

Finally, pursuant to the Court's inherent authority: (1) Plaintiffs' request to be reimbursed for the attorneys' fees and costs they incurred in attempting to conduct discovery and in filing the instant motion should be granted, *Chambers*, 501 U.S. at 45; and (2) the Court should order an accounting of the partnership funds involved in the parties' joint ventures so as to determine the amount of damages. FED. R. CIV. P. 55(b); *see also* TEX. BUS. ORG. CODE § 152.205(1)(B) (providing that "a partner's duty of loyalty includes accounting to and holding for the partnership property, profit, or benefit derived by the partner . . . from use by the partner of partnership property").

## C. Conclusion

For the foregoing reasons, Plaintiffs' *Petition for Fees*, Doc. 61, and *Motion for Sanctions*, Doc. 64, should be **GRANTED** to the extent stated herein.

**SO RECOMMENDED** on April 12, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE