IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY K GARVIN AND MARTIN J. GARVIN, AS TRUSTEES OF THE THOMAS M. GARVIN TRUST a/k/a THE THOMAS M. GARVIN FAMILY TRUST, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:15-CV-2157-L** |
| ARCTURUS VENTURE PARTNERS INC. f/k/a ARCTURUS CORPORATION AND LEON ALI PARVIZIAN a/k/a ALEX PARVIZIAN, | § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Plaintiffs' Petition for Fees (Doc. 61), filed January 11, 2017; and Plaintiffs' Motion for Sanctions Against Defendants for Failure to Comply with Court Orders ("Motion for Sanctions") (Doc. 64), filed January 18, 2017. Both motions were referred to United States Magistrate Judge Renée Harris Toliver, who entered the Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") on April 12, 2017. For the reasons herein explained, the court **accepts** the magistrate judge's recommendation as to Plaintiffs' Petition for Fees (Doc. 61), **grants** Plaintiffs' Petition for Fees (Doc. 61) to the extent recommended by the magistrate judge, and **awards** Plaintiffs **$1,435** for attorney's fees and costs incurred in connection with their prior Motion to Compel (Doc. 43). The court **rejects** the magistrate judge's

**Memorandum Opinion and Order - Page 1**

recommendation regarding Plaintiffs' Motion for Sanctions Against Defendants for Failure to Comply with Court Orders (Doc. 64) and **denies** this motion as premature.

I.  **Factual and Procedural Background**

On June 26, 2015, Plaintiffs, Mary K. Garvin and Martin J. Garvin, brought this action in their capacity as Trustees of the Thomas M. Garvin Trust a/k/a The Thomas M. Garvin Family Trust (the "Trust"). This lawsuit involves investments by Thomas M. Garvin, through the Trust in seven different oil and gas joint ventures that were formed by Defendants Arcturus Venture Partners, Inc. f/k/a Arcturus Corporation ("Arcturus") and its owner Leon Ali Parvizian a/k/a Alex Parvizian ("Parvizian") (collectively, "Defendants") to conduct oil and gas exploration and drilling activities. After Thomas M. Garvin passed away, trustees Mary G. Garvin and Martin J. Garvin of the Trust ("Plaintiffs") brought this suit against Arcturus, asserting claims for breach of fiduciary duty, common law fraud and fraud by nondisclosure, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and negligent misrepresentation. Plaintiffs requested an accounting, an unspecified amount of monetary damages representing "the balance due from Defendants," and attorney's fees. Pls.' Orig. Compl. 5. Arcturus filed its Original Answer to the Plaintiffs' Complaint on September 29, 2015.

On September 20, 2015, Plaintiffs filed their First Amended Complaint ("Amended Complaint"), in which Parvizian was added as a party. In their Amended Complaint, Plaintiffs added a claim for negligent misrepresentation and allege with respect to all of their claims, except for their DTPA claim, that they "have suffered damages in an amount to be determined at trial." Pls.' Am. Compl. ¶¶ 33, 38, 43, 50. Plaintiffs allege, with respect to their DTPA claim, that they are entitled to recover treble economic damages under section 17.50(b)(1) of the Texas Business & Commerce

Code. On November 3, 2015, Defendants filed a motion for partial dismissal of Plaintiffs' Amended Complaint, which the court denied on January 11, 2017.[1]

While their motion to dismiss was pending, Defendants moved to stay discovery in this case, pending resolution of their motion to dismiss, which the court denied. On April 5, 2016, Defendants' counsel also filed a motion to withdraw as counsel of record, which, according to the motion, was not opposed by Defendants. On April 6, 2016, the court granted the motion to withdraw, and, because no substitute counsel was named, the court directed Defendants to obtain substitute counsel by May 6, 2016. Order (Doc. 36).

On May 6, 2016, Defendants' new counsel made an appearance in the case but subsequently filed an unopposed motion on September 23, 2016, to withdraw as counsel for Defendants, which was granted by the court on October 7, 2016. The court's October 7, 2016 order did not impose a deadline for Defendants to obtain substitute counsel; however, on October 25, 2016, Parvizian filed correspondence on behalf of himself and Arcturus, requesting that the court "not make any further rulings" for thirty days while Defendants attempted to retain more affordable counsel, which the court granted on October 27, 2016.[2] Although there was no deadline pending for Parvizian or Arcturus to obtain substitute counsel, the court's October 27, 2016 order treated Parvizian's correspondence as a motion to extend Parvizian's deadline to obtain counsel without addressing the

---

[1] It does not appear from the docket in this case that Parvizian ever filed an answer to Plaintiffs' Amended Complaint after the court denied Defendants' motion to dismiss. Plaintiffs, however, have not moved for default judgment against Parvizian on this ground. Accordingly, the court does not consider this fact in ruling on Plaintiffs' request that the court enter default judgment against Defendants as a sanction for their alleged failure to comply with two orders.

[2] The docket indicates that all mail sent by the clerk to Defendants on and after November 23, 2016, including the December 16, 2016 discovery order, was returned as undeliverable. *See* Docs. 52, 53, 54, 55, 56, 58, 59, 67, 69. The court, however, does not take into account this fact in ruling on Plaintiffs' motions (Docs. 61, 64), as all mail returned as undeliverable was sent to the address provided in Parvizian's October 24 2016 correspondence (Doc. 49) pursuant to his request that all further correspondence be sent to this address.

**Memorandum Opinion and Order - Page 3**

request for a similar extension for Arcturus, which unlike Parvizian, could not proceed pro se without counsel because of its status as a corporation. The court also did not address Parvizian's request that the court "not make any further rulings" for thirty days while Defendants attempted to retain counsel.

Before Defendants' counsel were allowed to withdraw on October 7, 2016, Defendants filed an unopposed motion to continue the Motion to Compel (Doc. 43) filed by Plaintiffs on September 22, 2016. The court granted the motion to continue, in light of counsel's withdrawal, and extended Defendants' deadline to respond to Plaintiffs' Motion to Compel to October 24, 2016. No response by Defendants was ever filed to the Motion to Compel, which was granted by the magistrate judge on December 16, 2016. In the order granting Plaintiffs' Motion to Compel, the magistrate judge set a deadline of January 15, 2017, for Defendants to produce documents responsive to Plaintiffs' discovery requests.

On January 11, 2017, Plaintiffs submitted billing records to support their request for attorney's fees in connection with their Motion to Compel. On January 18, 2017, Plaintiffs filed their Motion for Sanctions, contending that Defendants failed to comply with the magistrate judge's December 16, 2016 discovery order and this court's October 27, 2016 order that extended Parvizian's deadline to obtain counsel.

## II. Summary of Relief Requested in Plaintiffs' Motions

In their Petition for Fees (Doc. 61), Plaintiffs seek to recover $4,270 for attorney's fees incurred in relation to their Motion to Compel (Doc. 43), which was granted by the magistrate judge on December 16, 2016.

In their Motion for Sanctions Against Defendants for Failure to Comply with Court Orders (Doc. 64), Plaintiffs request that the court enter sanctions against Defendants in the form of a default judgment pursuant to Federal Rules of Civil Procedure 16(f) and 37(b) for:

> Defendants' failure to comply with the Court's orders dated October 27, 2016 and December 16, 2016, requiring Defendants to obtain counsel by November 28, 2016, and to fully comply with all outstanding written discovery by January 15, 2017 (Dkt. #'s 51 and 57), and for their repeated failures to otherwise comply with their discovery obligations under the Federal Rules of Civil Procedure and the Local Rules.

Pls.' Mot. 1 (Doc. 64). No amount of damages was specified in Plaintiffs' Motion for Sanctions with respect to their entry of default judgment, and Plaintiffs' First Amended Complaint does not include a claim for a liquidated sum. In addition, Plaintiffs offered no explanation in their Motion for Sanctions as to whether and how their damages are capable of mathematical calculation without an evidentiary hearing. Plaintiffs also request that the court award them their "reasonable costs, including attorneys' fees, incurred in bringing [their Motion for Sanctions] and [as a result of] their attempts to obtain discovery from Defendants." *Id*. at 3. No amount of attorney's fees was specified in Plaintiffs' Motion for Sanctions, and no evidence supporting an award of fees and costs was submitted in support of the motion.

On August 4, 2017, Plaintiffs submitted the declaration of Plaintiff Martin J. Garvin to support their request for default judgment and the declaration of attorney Anthony J. Carballo and billing records for the Chicago law firm of Freeborn & Peters LLP and local counsel Jackson Walker, LLP to support their request for attorney's fees and costs in relation to Plaintiffs' Motion for Sanctions. Martin J. Garvin states that the total amount of compensatory damages being sought by Plaintiffs is $4,333,246, and that this amount was determined by calculating the present value of the cash flows associated with the $2,298,704 total investment made by Thomas M. Garvin between

**Memorandum Opinion and Order - Page 5**

2003 and 2008 minus the $344,932 in investment returns paid by Defendants, using a proposed return rate of 6.74%. Anthony J. Carballo states in his declaration that Plaintiffs are seeking $192,277.84 for attorney's fees and expenses incurred during this case through May 2017, including fees and costs incurred in March 2015 prior to filing suit.

## III.   Magistrate Judge's Recommendation

In the Report entered on April 12, 2017, Judge Toliver recommended that the court grant Plaintiffs' Petition for Fees (Doc. 61) and award Plaintiffs attorney's fees in the amount of $1,435 in connection with their prior Motion to Compel (Doc. 43). Judge Toliver also recommended that the court grant Plaintiffs' Motion for Sanctions Against Defendants for Failure to Comply with Court Orders (Doc. 64), enter a default judgment against Plaintiffs pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) for their failure to comply with: (1) the magistrate judge's December 16, 2016 order (Doc. 57), which granted Plaintiffs' Motion to Compel (Doc. 43) and required Defendants to produce certain documents by January 15, 2017; and (2) this court's October 27, 2016 order that extended Parvisian's deadline to obtain counsel to November 28, 2016. In addition, the magistrate judge recommended that the court: (1) grant Plaintiffs' request to recover attorney's fees and costs incurred in attempting to conduct discovery and filing their Motion for Sanctions; and (2) "order an accounting of the partnership funds involved in the parties' joint ventures so as to determine the amount of damages. FED. R. CIV. P. 55(b); *see also* TEX. BUS. ORG. CODE § 152.205(1)(B) (providing that "a partner's duty of loyalty includes accounting to and holding for the partnership property, profit, or benefit derived by the partner . . . from use by the partner of partnership property")." Report 10.

No objections to the Report were filed. Instead, as noted above, Plaintiffs supplemented their Motion for Sanctions and request for default judgment by submitting evidence regarding the amount of their damages for the claims asserted against Defendants and the amount of attorney's fees and costs sought by them in connection with their Motion for Sanctions. Defendants did not respond to either of Plaintiffs' motions or Plaintiffs' supplemental materials that were filed on August 4, 2017.

## IV. Discussion

### A. Standard of Review

A magistrate judge's determination regarding a dispositive matter is reviewed de novo if a party timely objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). A magistrate judge's determination regarding a nondispositive matter is reviewed under the "clearly erroneous or contrary to law" standard. 28 U.S.C. 636(b)(1)(A); Fed. R. Civ. P. 72(a) ("[t]he district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law."). This highly deferential standard requires the court to affirm the decision of the magistrate judge unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *United States v. Unites States Gypsum Co.*, 333 U.S. 364, 395 (1948). As explained by the court in *Arters v. Univision Radio Broadcasting TX, L.P.*, No. 3:07-CV-0957-D, 2009 WL 1313285 (N.D. Tex. May 12, 2009):

> The clearly erroneous standard applies to the factual components of the magistrate judge's decision. The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it. The legal conclusions of the magistrate judge are reviewable de novo, and the district judge reverses if the magistrate judge erred in some respect in [his] legal conclusions. [T]he abuse of

discretion standard governs review of that vast area of choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.

*Id.* at *2 (citations and internal quotations marks omitted).

The imposition of discovery sanctions is nondispositive and thus subject to the "clearly erroneous or contrary to law" standard of review set forth in n 28 U.S.C. § 636(b)(1)(A) and Rule 72(a). *See Merritt v. International Bhd. of Boilermakers*, 649 F.2d 1013, 1018 (5th Cir. 1981) ("Since discovery issues are by definition pretrial matters, the magistrate possessed authority under 28 U.S.C. § 636(b)(1)(A) to assess reasonable expenses and attorney's fees under Rule 37(a)(4), even after judgment was rendered in the case." On the other hand, entry of a default judgment, including default judgment entered as a sanction pursuant to Rule 37(b), is case dispositive. *See, e.g., First Regency Enterprises, Inc. v. CH MM Denton LLC*, No. 3:07-CV-1175-L, 2009 WL 1542522, at *1-2 & n.1 (N.D. Tex. June 2, 2009). Accordingly, a magistrate judge's recommendation that the district court enter a default judgment against a party is reviewed de novo.

### B. Plaintiffs' Petition for Fees (Doc. 61)

As noted, the magistrate judge recommended that the court grant Plaintiffs' Petition for Fees (Doc. 61) and award Plaintiffs attorney's fees and costs in the amount of $1,435 in connection with their prior Motion to Compel (Doc. 43). No objections to the Report with respect to Plaintiffs' Petition for Fees. Having reviewed the motion, evidence, file, record in this case, and Report, the court determines that the findings and conclusions of the magistrate judge as to Plaintiffs' Petition for Fees (Doc. 61) are correct, and **accepts** them as those of the court. Accordingly, the court **grants** Plaintiffs' Petition for Fees (Doc. 61), to the extent recommended by the magistrate judge, and,

pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), **awards** Plaintiffs **$1,435** for attorney's fees and costs incurred in connection with their prior Motion to Compel (Doc. 43)

### C. Plaintiffs' Motion for Sanctions (Doc. 64)

As explained, the magistrate judge recommended that the court, pursuant to Rule 37(b) and the court's inherent authority: (1) grant Plaintiffs' request for entry of a default judgment against Defendants for their failure to comply with the magistrate judge's December 16, 2016 discovery order and this court's October 27, 2016 order extending Parvizian's deadline to obtain counsel; (2) grant Plaintiffs' request to recover attorney's fees and costs incurred in attempting to conduct discovery and filing their Motion for Sanctions; and (3) order an accounting of the partnership funds involved in the parties' joint ventures for purposes of determining the amount of Plaintiffs' damages in this case.

#### 1. Standard for Imposition of Sanctions Under Rule 37(b) and the Court's Inherent Authority

Regarding the failure to comply with a discovery order, Federal Rule of Civil Procedure 37(b)(2)(A) provides:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;

>    (v) dismissing the action or proceeding in whole or in part;
>
>    (vi) rendering a default judgment against the disobedient party; or
>
>    (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The imposition of appropriate sanctions under Rule 37(b)(2)(A) is discretionary. *See id.* Rule 37(b)(2)(C) further requires that, "[i]nstead of or in addition to the orders [described under Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Thus, Rule 37(b)(2) gives courts the authority to impose sanctions for failures to obey discovery orders, and, in addition to a broad range of sanctions, including contempt, the rule authorizes the imposition of "a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (internal quotation marks omitted); *see also Chilcutt v. United States*, 4 F.3d 1313, 1322 n.23 (5th Cir. 1993) ("Rule 37(b) clearly indicates that district courts have authority to grant a broad spectrum of sanctions.").

The broad discretion given to district courts under Rule 37(b) to fashion remedies suited to particular misconduct, however, is not unlimited. *Smith & Fuller, P.A.*, 685 F.3d at 488. A finding of "bad faith or willful misconduct" is normally required "to support the severest remedies under Rule 37(b)—striking pleadings or dismissal of a case." *Id.* (internal quotation marks omitted); *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988) ("We have repeatedly emphasized that a dismissal with prejudice is a 'draconian' remedy, or a 'remedy of the last resort,' to be employed only when the failure to comply with the court's order results from wilfullness or bad

**Memorandum Opinion and Order - Page 10**

faith rather than from an inability to comply. Nevertheless, deliberate, repeated refusals to obey discovery orders have been held to warrant the use of this ultimate sanction.") (footnote omitted). Further, "Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

District courts also have inherent power to impose sanctions for litigation misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991). This inherent power derives from a district court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chamber*s, 501 U.S. at 43 (quotation marks and citation omitted). Entry of a judgment by default is available to facilitate the exercise of the court's inherent power to control its docket. *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985) (citing *Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885, 887 (5th Cir.1968)). The imposition of sanctions pursuant to a court's inherent power, however, "must be exercised with restraint and discretion," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980), and "requires a finding of bad faith or willful abuse of the judicial process." *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014) (quoting *Gonzalez v. Trinity Marine Grp.*, Inc., 117 F.3d 894, 898 (5th Cir. 1997) (internal quotation marks omitted)). "[T]he finding of bad faith must be supported by clear and convincing proof." *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001). The severe sanction of dismissal or default judgment pursuant to a court's inherent authority should only be imposed as a last resort, when less drastic sanctions will not ensure compliance with the court's orders. *See Sample v. Miles*, 239 F. App'x 14, 20, 2007 WL 486770, at *3 n.14 (5th Cir. 2007) ("Sanctions under a court's inherent power to punish abusive litigation practices are

permissible but should be used as a last resort, if sanctions under the Federal Rules [do not] fit and there is "bad faith.'") (quoting *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001)). When exercising its inherent power, the court must comply with due process in determining bad faith and affixing sanctions. *Chambers*, 501 U.S. at 50.

    2.    **Appropriateness of Sanctions Requested by Plaintiffs**

        a.    **Default Judgment**

Although no objections to the magistrate judge's recommendation regarding Plaintiffs' Motion for Sanctions were asserted, the court determines that entry of default judgment as a sanction against Defendants for the alleged failure to comply with the December 16, 2016, and October 27, 2016 court orders is premature and not supported the record. Specifically, there is no evidence, in the form of an affidavit or otherwise, that Defendants failed to comply with the December 16, 2016 discovery order or other unspecified discovery obligations that were not previously addressed in connection with Plaintiffs' Motion to Compel, and the court determines that Plaintiffs' unsupported contention in this regard is insufficient to support a finding of bad faith based on clear and convincing evidence or the imposition of the severe sanction of default judgment.

Moreover, the court's October 7, 2016 order did not impose a deadline for Defendants to obtain substitute counsel, and, while the court's October 27, 2016 order granted Parvizian's request to extend a nonexistent deadline to obtain counsel, it did not set a new deadline for Arcturus to obtain substitute counsel, and, unlike Arcturus, Parvizian was not technically required to obtain counsel, as he may proceed pro se. Accordingly, Defendants' conduct with respect to these orders and their alleged conduct with respect to the one discovery order do not support a finding that Defendants engaged in bad faith or willful misconduct by repeatedly refusing to comply with court

orders because: (1) Parvizian, as an individual, may proceed pro se without counsel and the court's October 27, 2016 order simply allowed him additional time to obtain counsel before entering any rulings in the case because Parvizian indicated that he wanted to be represented by counsel; (2) the court's October 7 and 27, 2016 orders did not impose any deadlines for Arcturus to retain counsel, although, as a corporate entity, it must be represented by counsel, and Parvizian, who is not an attorney, cannot represent Arcturus in this litigation; and (3) there is no evidence that Defendants actually violated the magistrate judge's December 16, 2016 discovery order. Instead, Plaintiffs' motion and the Report both rely on Plaintiffs' contention that Defendants failed to comply with this order. *Nissho–Iwai Am. Corp.*, 845 F.2d at 1304 (noting that *repeated* refusals to obey discovery orders may warrant imposition of an ultimate sanction such as default judgment but emphasizing that dismissal with prejudice is a "draconian" remedy of last resort that should only be applied upon a finding that a party's failure to comply with a court order was done wilfully or in bad faith).

Even if Plaintiffs had come forward with evidence to demonstrate that Defendants failed to comply with the magistrate judge's December 16, 2016 discovery order, entry of default judgment against Defendants on all of Plaintiffs' claims would be disproportionate to the alleged offense of failing to comply with a single discovery order. Such a drastic sanction would also be inappropriate, as it is unclear whether the discovery at issue related to all of Plaintiffs' claims or only a particular claim. *See Insurance Corp. of Ireland, Ltd.*, 456 U.S. at 707. Additionally, neither this court's October 27, 2016 order nor the magistrate judge's December 16, 2016 discovery order warned Defendants that their failure to comply with the orders could result in entry of default judgment against them on some or all of Plaintiffs' claims. As a result, the imposition of sanctions based on these orders would not comply with due process. *Chambers*, 501 U.S. at 50.

Further, even if entry of default as to liability was warranted, entry of a final judgment for damages based on Plaintiffs' pleadings and supplemental submission regarding damages would require an evidentiary hearing.[3] "As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing. That rule, however, is subject to an exception whe[n] the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Under Texas law, liquidated damages are generally those that are fixed by operation of law or based on "an acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach." *Nixon v. Goldman Sachs Mortgage Corp.*, No. 3:16-CV-597-L, 2016 WL 3763425, at *5 (N.D. Tex. July 14, 2016) (quoting *Flores v. Millenium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005)); *see IBEW-NECA Sw. Health & Benefit Fund v. Heritage Specialities*, 2003 WL 21673487, at *1 (N.D. Tex. July 15, 2003) (awarding plaintiffs liquidated damages on default judgment where the fund provided that liquidated damages are "equal to $20.00 or ten percent (10%) of unpaid contributions"). A sum capable of mathematical calculation is one that can be "'computed with certainty by reference to the pleadings and supporting documents alone,' rendering an evidentiary hearing unnecessary." *See James*, 6 F.3d at 311 (quoting *Frame v. S-H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992)).

Plaintiffs do not request in their pleadings or Motion for Sanctions a particular amount of damages. In their supplemental filing, Plaintiffs request compensatory damages totaling $4,333,246.

---

[3] "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *See United States v. Shipco Gen.*, 814 F.2d 1011, 1014 (5th Cir. 1987). The magistrate judge apparently recommended that the court order an accounting under Federal Rule of Civil Procedure 55(b) of the partnership funds involved in the parties' joint ventures for purposes of determining the amount of damages because, as noted, neither Plaintiffs' pleadings nor their Motion for Sanctions contains allegations or evidence regarding the amount of damages.

**Memorandum Opinion and Order - Page 14**

The court determines that this amount is neither liquidated nor computable with certainty. Plaintiff Martin J. Garvin states in his declaration that he arrived at this sum by calculating the present value of the cash flows associated with the $2,298,704 total investment made by Thomas M. Garvin between 2003 and 2008, minus the $344,932 in investment returns paid by Defendants, using a proposed return rate of 6.74%, which according to Martin J. Garvin's declaration, is "the average return on the S&P 500 index over the 14-year period from the initial investment [Thomas M.] Garvin made through the end of 2016." Martin J. Garvin Decl. ¶ 5 (Doc. 70-1). Martin J. Garvin, however, does not explain why application of a 6.74% rate of return based on the average return on the S&P index is appropriate for purposes of calculating Plaintiffs' damages for the claims asserted with respect to Thomas M. Garvin's investments in "a number of . . . purported joint ventures (the 'Joint Ventures') that would conduct oil and gas exploration and drilling activities." Pls.' Am. Compl. ¶ 9. Plaintiffs do not allege in their Amended Complaint that Defendants agreed to or promised any rate of return on the investments or that Thomas M. Garvin expected any particular rate of return on his investments as a result of Defendants' representations.

The court also has concern whether Plaintiffs' theory of damages, which appears to be based on "investment opportunity losses", is cognizable. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No G-02-0299, 2007 WL 789141, at *4 n.12 (S.D. Tex. Mar. 12, 2007) (citing *Manzo v. Rite Aid Corp.*, No. A 18451-NC, 2002 WL 31926606, *5 (Del. Ch. Dec. 19, 2002) (dismissing plaintiffs' fraud claim for "investment opportunity losses" as too speculative because "awarding money damages to compensate plaintiff for the return she *could* have earned had she invested elsewhere . . . amounts to speculation founded upon uncertainty," as it requires the court to "presume that plaintiff's investment in Rite Aid stock would have been deployed in other more

successful investments had plaintiff been privy to accurate information concerning Rite Aid's financial performance"; and concluding that any claim to recover for injury of a poor rate of return on the plaintiff's stock attributable to lack of accurate information on which to base investment decisions constituted a derivative claim that was suffered by all Rite Aid shareholders in their pro rata share ownership). Accordingly, even if entry of default were appropriate, an evidentiary hearing would be necessary before the court could make a determination regarding damages. For all of these reasons, the court **rejects** the magistrate judge's findings and recommendation that the court enter default judgment against Defendants and **denies** Plaintiffs' request in their Motion for Sanctions for entry of a default judgment against Defendants.

                    b.        **Attorney's Fees and Costs**

As previously noted, Rule 37(b)(2) authorizes, in addition to a broad range of sanctions, the imposition of "a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (internal quotation marks omitted). The magistrate judge recommendation that Plaintiffs should be allowed to recover the attorney's fees and costs they incurred in attempting to conduct discovery and filing their Motion for Sanctions, exclusive of the amounts sought and awarded with respect to Plaintiffs' Motion to Compel. Plaintiffs, on the other hand, request for the first time in their supplemental filing an award of $192,277.84 for all attorney's fees and costs incurred during this litigation, as well as those incurred before this action was filed.

For the reasons already explained, the imposition of sanctions in the form of a default judgment, attorney's fees, or both, is not supported by the record in this case or Plaintiffs' evidence. Even if Plaintiffs could establish that Defendants failed to comply with the magistrate judge's

December 16, 2016 discovery order, an award of $192,277.84 for all attorney's fees and costs incurred by them during and preceding this litigation would be disproportionate in relation to any such misconduct. It is also unclear whether the attorney's fees incurred and awarded to Plaintiffs in conjunction with their Motion to Compel are included in the $192,277.84.

In addition, Plaintiffs' Motion for Sanctions and supplemental materials do not include analysis under applicable law that establishes the reasonableness of the attorney's fees and costs requested, and Plaintiffs' supporting evidence does not contain sufficient information from which the court would be able to determine the reasonableness of the attorney's fees and costs incurred and requested, as no billing records were submitted and only cursory information regarding the experience of the attorneys who performed the professional services, other than Anthony J. Carballo, was provided. Accordingly, for these reasons, the court **rejects** the magistrate judge's findings and recommendation that the court should allow Plaintiffs to recover the attorney's fees and costs they incurred in attempting to conduct discovery and filing their Motion for Sanctions and **denies** Plaintiffs' request in their Motion for Sanctions (Doc. 64) for an award of attorney's fees and costs.

V. **Conclusion**

For the reasons herein stated, the court **concludes** that the findings and conclusions of the magistrate judge with respect to Plaintiffs' Petition for Fees (Doc. 61) are correct; **accepts** them as those of the court; **grants** Plaintiffs' Petition for Fees (Doc. 61) to the extent recommended by the magistrate judge; and **awards** Plaintiffs **$1,435** for the attorney's fees and costs incurred in connection with their Motion to Compel (Doc. 43). The court **rejects** the magistrate judge's findings and conclusions with respect to Plaintiffs' Motion for Sanctions Against Defendants for Failure to Comply with Court Orders (Doc. 64) and **denies** as premature this motion. In denying Plaintiffs'

Motion for Sanctions, the court is not suggesting that Defendants' conduct in this action is cause for commendation or approbation, as the court suspects that Defendants have engaged in some gamesmanship for purposes of delaying the litigation. The court instead is simply saying that Defendants "dodged a bullet" this time because the record and Plaintiffs' evidence were insufficient to support the sanctions requested by Plaintiffs.

Further, Arcturus **shall** retain counsel by **October 27, 2017**, or show cause in writing by this date for its failure to do so. While Arcturus's owner Parvizian may proceed pro se and represent himself, corporate Defendant Arcturus cannot represent itself, and Parvizian cannot represent Arcturus unless he is an attorney licensed to practice law. *See Southwest Express Co. v. Interstate Commerce Comm'n*, 670 F.2d 53, 55 (5th Cir. 1982) ("The rule is well established that a corporation can appear in a court of record only by an attorney at law.") (citation omitted); *In Re K.M.A., Inc.*, 652 F.2d 398, 399 (5th Cir. 1981) ("The law is clear that a corporation as a fictional legal person can only be represented by licensed counsel. This is so even when the person seeking to represent the corporation is its president and major stockholder.") (citations omitted). If Parvizian elects to represent himself, he must understand that his decision to proceed pro se will not entitle him to any greater rights than a party represented by counsel. Parvizian will be required to read and follow the local civil rules of this court and the Federal Rules of Civil Procedure. L.R. 83.14. *Given the delays to date attributable to the withdrawal of Defendants' attorneys and the related extensions requested by them to obtain counsel, the court will not give Arcturus any additional extensions to retain counsel absent exceptional circumstances and good cause shown, and, while Parvizian is free to retain counsel, no further extensions will be provided to him for this purpose in light of the age of this case if doing so will further delay resolution of this litigation.*

Because the trial setting and deadline for filing pretrial materials is fast approaching, the court **vacates** the November 6, 2017 trial setting, the November 3, 2017 pretrial conference, the deadlines for filing pretrial materials, and the settlement conference deadline to give Arcturus time to obtain counsel as required by this order. The court will enter by separate order an amended scheduling order that resets the trial, pretrial conference, and pretrial material deadlines. *Failure of Arcturus to comply with this order will result in a default judgment against it or other sanctions, as the court deems appropriate.* Additionally, as noted in the court's scheduling order (Doc. 66), "[i]f counsel or any party fails or refuses to do anything required by this order . . . ***or any other order entered by the court***, such party or counsel, or both, may be subject to sanctions without further notice. These sanctions may include striking a party's witnesses or exhibits, striking a party's claims or defenses, dismissal of a party's claims, entry of default, payment of expenses by the offending party or attorney, or other sanctions the court deems appropriate." Accordingly, Defendants have been forewarned.

**It is so ordered** this 28th day of September, 2017.

*[signature]*
Sam A. Lindsay
United States District Judge